IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TIMOTHY A.,[1]

      Plaintiff,

   v.                                                                      Case No. 21-cv-688-WJ-SCY

KILOLO KIJAKAZI,[2]
Acting Commissioner of
Social Security,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff argues that the Commissioner committed error when denying Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the ALJ erred at step five, when he failed to properly identify Plaintiff's prior relevant work and transferrable skills. As a result, he moves the Court to reverse and remand the case for rehearing based on these vocational issues. Having reviewed the parties' submissions and the applicable law, I recommend that the Court DENY Plaintiff's Motion To Reverse And Remand, With Supporting Memorandum, Doc. 20, and affirm the decision below.[3]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[3] The Honorable William P. Johnson referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 5.

**APPLICABLE LAW**

  A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

  (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

  (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

  (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

  (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>    most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

   A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## **ANALYSIS**

Plaintiff makes two arguments: that the ALJ fails to resolve a conflict between the occupational information listed in the Dictionary of Occupational Titles ("DOT") and the vocational expert's ("VE") testimony, and that the ALJ erroneously considers Plaintiff to have the transferrable skills necessary for three occupations for which he is not trained. I consider each in turn.

**I.    Legal standard**

The ALJ denied benefits at step five in this case, finding Plaintiff's past skilled work involved skills that can transfer to other occupations in the national economy. AR 52-53. Plaintiff is an individual of "advanced age" under the regulations. AR 52; *see* 20 C.F.R. §§ 404.1563(e), 416.963(e). "[T]he Commissioner faces a more stringent burden when denying disability benefits to older claimants." *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001) (internal quotation marks omitted). "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. §§ 404.1563(e), 416.963(e).

"The acquisition of skills that are transferable to other work, however, gives a claimant 'a special advantage over unskilled workers in the labor market.'" *Dikeman*, 245 F.3d at 1184 (quoting SSR 82-41, 1982 WL 31389, at *2). Transferability of skills is therefore an issue when an individual cannot meet the demands of his past relevant work, and that work has been determined to be skilled or semiskilled. SSR 82-41, 1982 WL 31389, at *1. A "skill" is:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making

>precise measurements, reading blueprints, and setting up and operating complex machinery.

SSR 82-41, 1982 WL 31389, at *2. "An ALJ can find a claimant's acquired skills are transferable to other jobs 'when the skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.'" *Dikeman*, 245 F.3d at 1185 (quoting 20 C.F.R. § 404.1568(d)(1); internal alteration omitted). "'Transferability is most probable and meaningful among jobs in which . . . [t]he same or a lesser degree of skill is required.'" *Id*. (quoting 20 C.F.R. § 404.1568(d)(2)).

"Before the Commissioner can find an advanced-age claimant's skills are transferable, he must show that 'very little, if any, vocational adjustment is required.'" *Id.* at 1188 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f); internal alteration omitted). "The work must be less demanding than that previously performed by the claimant; at the same time, though, it cannot require so little skill that anyone at all could do it, as older people are at a competitive disadvantage for such jobs." *Id.* (internal quotation marks omitted).

## II.     Conflict Regarding Plaintiff's Past Relevant Work

Plaintiff worked from at least 2002 to 2011 as a bank special assets officer and from 2011 to 2014 as a bank consultant. AR 67-69. He did not work from 2014 until his alleged disability onset date of May 16, 2017, at which time he was 59 years old. AR 52, 82, 124. For his past relevant work, he advised a bank on "problematic loans" such as past-due or nonperforming loans. AR 67.

Plaintiff's application was denied initially on July 12, 2019, AR 122, and on reconsideration on January 9, 2020, AR 123. At both levels, the DDS[5] reviewer found Plaintiff could perform sedentary work, classified Plaintiff's past relevant work as sedentary, and therefore found he could return to his past relevant work and was not disabled. AR 113, 129. At the hearing before the ALJ, Plaintiff's attorney argued that this was a misclassification of his past relevant work because as Plaintiff actually performed it, it was light work. AR 65.

Unfortunately, it appears that Plaintiff's past relevant work has no precise analogue in the DOT.[6] Plaintiff's counsel represented to the ALJ that he and his client "have taken a look at the DOT" and while Plaintiff has "done a lot of those duties" described in the DOT for work as a bank manager, "his job as a special assets manager has a special twist and we cannot find his specific job in the DOT." AR 65; *see also* AR 135 (referencing past relevant work as a financial institution manager). Plaintiff's counsel also explained that "DDS identified a sedentary job, and Mr. Alexander and I believe they got the wrong job, that his . . . job may not . . . actually be in the DOT." AR 66.

The VE had similar difficulty finding a job in the DOT that matched Plaintiff's past relevant work. He testified that the position of "bank consultant" is not described in the DOT.

---

[5] The Social Security Administration works with states "to provide and maintain an effective system for processing claims of those who apply for and who are receiving" disability benefits. 20 C.F.R. §§ 404.1603, 416.1003. State agencies make initial "determinations of disability with respect to all persons in the State." *Id.* §§ 404.1613, 416.1013. In this state, the New Mexico Disability Determination Services ("DDS") makes those determinations in two stages: at the initial application level and on reconsideration. After a denial, the claimant may then request a hearing in front of a Social Security Administration ALJ.

[6] The SSA takes administrative notice of the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor. 20 C.F.R. § 404.1566(d)(1). The SSA accepts the DOT definitions as reliable evidence at step four of a claimant's past work "as it is usually performed in the national economy." Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2.

AR 72. When the ALJ asked the VE "to describe the Claimant's past work," the VE testified that he "had him as a department manager in a bank" and listed the DOT number as # 299.127-010. AR 70.

There are two problems with this testimony. First, the parties agree that no such DOT entry exists. Doc. 20 at 10; Doc. 25 at 4 n.4. As they further agree, the entry the VE likely intended was DOT 299.1**3**7-010. *Id.* (emphasis on 3 added). This brings us to the second problem: even correcting the VE's error, this latter corrected entry refers to "manager, department (retail trade)"—an individual who supervises and coordinates retail workers at a department store, not someone who consults for a bank. Doc. 20 at 10. In other words, the VE's initial testimony that he "had him as a department manager *in a bank*" was incorrect.

I therefore agree with Plaintiff that Plaintiff's past work (bank special assets officer and a bank consultant) does not match the description of work in the DOT that the VE concluded best applied to Plaintiff's past work. The position to which the VE intended to refer (a department manager in a retail store), has little in common with how Plaintiff described his past work. *Compare* AR 67-68 (Plaintiff testifying that he advised banks on problematic loans and loan collection), *with* DOT 299.137-010, 1991 WL 672616 (a retail department manager supervises employees and is in charge of retail inventory and sales). Accordingly, if the VE and ALJ used the inapt DOT listing to describe Plaintiff's past work and as a reference to determine what skills from that past work could transfer, I would conclude that the ALJ's decision is not supported by substantial evidence in the record. Neither the VE nor the ALJ, however, relied on the DOT as a guide to what skills from Plaintiff's past relevant work could transfer to new work within his residual functional capacity.

Nor can Plaintiff validly complain that, in determining which of Plaintiff's skills were transferrable, the VE and ALJ looked to Plaintiff's description of his past work rather than to a definition in the DOT. As set forth above, Plaintiff began the hearing before the ALJ by noting that Plaintiff's "job may not . . . actually be in the DOT." AR 66. Thus, rather than arguing that the VE and ALJ should have, but did not, rely on the DOT, Plaintiff's more nuanced argument begins with his observation that a discrepancy exists between the DOT's description of the job the VE identified as best applying to Plaintiff's past work and evidence of what Plaintiff's past work actually involved. Because the ALJ did not resolve this discrepancy, Plaintiff argues, the ALJ committed reversible error. Doc. 20 at 11, Doc. 28 at 2. On this point, I disagree with Plaintiff.

SSR 00-4p reads as follows:

> Occupational evidence provided by a VE [] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE [] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE [] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE [] is reasonable and provides a basis for relying on the VE [] testimony rather than on the DOT information.

2000 WL 1898704, at *2. SSR 00-4p goes on to provide an example of a reasonable explanation for a conflict: "Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's [] experience in job placement or career counseling." *Id.*

Here, in deciding what, if any, skills from Plaintiff's past work were transferrable, the VE and the ALJ looked not to a description of work in the DOT, but to Plaintiff's own description of

9

his past work. The ALJ first asked the VE "are there transferable skills that would readily transfer to other occupations within these limitations?" AR 98. The VE then identified "computer use; being able to deal with detained and sometimes confusing information, financial information; and being able to keep track of what is going on with it; . . . being able to make, make and understand financial records." AR 98-99. The ALJ then asked, "so, you're looking at, at the, at the skills that he obtained in the jobs that he had . . . what skills he would have learned that would readily transfer. Are those all the skills?" AR 99. The VE answered, "Well, they're, they're the ones that transfer to these particular . . . different jobs." AR 99-100.

This dialogue between the ALJ and VE demonstrates that, in opining about Plaintiff's transferable skills, the VE was looking at what Plaintiff actually did, not at a DOT job title that did not accurately describe what Plaintiff actually did. As corroboration that the VE was looking to Plaintiff's description of what he did rather than an inapt DOT description, I note that the transferable skills the VE identified, such as being able to understand financial information and records, naturally appear to relate to Plaintiff's past relevant work as a bank consultant and bank special assets officer.

In short, the existence of a mismatch between the closest DOT job description the VE could find for Plaintiff's past work and what Plaintiff actually did does not mean that the ALJ necessarily erred. Plaintiff cites no authority for the proposition that, when determining transferrable skills, an ALJ's inability to determine a precise DOT entry corresponding to a claimant's prior work constitutes reversible error.

The case Plaintiff cites, *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), involved a VE who testified that the claimant could perform certain jobs despite the fact that the exertional levels set forth in the DOT for those jobs exceeded the claimant's RFC. *Id*. at 1089. Unlike the

present case, *Haddock* did not involve the situation where the DOT simply did not list a claimant's past work. In other words, *Haddock* did not involve a mismatch between the closest description in the DOT of the job the claimant previously performed and the past work the claimant actually performed. Instead, in *Haddock*, the Tenth Circuit assumed the DOT's description of the claimant's past work was accurate. *Id.* at 1089-90. Accordingly, the DOT's description of the exertional levels associated with that past work could not be disregarded without explanation. *Id.* at 1089.

If anything, *Haddock* supports the ALJ's decision in this case. There, the Tenth Circuit distinguished the facts before it from a hypothetical situation that, it turns out, now describes the facts in the present case:

> We do not mean by our holding that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability. One reasonable explanation would be that the job the VE is testifying about is not included in the Dictionary, but is documented in some other acceptable source.

*Id.* at 1091. Here, I find that the ALJ did "investigate and elicit a reasonable explanation" for the discrepancy, and that reasonable explanation—as recognized by Plaintiff's counsel—was "that the job the VE is testifying about is not included in the Dictionary." *Cf. id.* As described above, the requirements and skills of the job came from another acceptable source—Plaintiff's own testimony.

Ultimately, the purpose of the inquiry into Plaintiff's work experience is to determine what transferrable skills Plaintiff had acquired in the course of that work. To the extent the absence of a description in the DOT of Plaintiff's work created a conflict, the ALJ resolved this conflict by looking to Plaintiff's actual past work, rather than an inapt DOT description of

11

Plaintiff's past work, to determine which of Plaintiff's skills might transfer. In other words, the DOT simply did not apply because, as Plaintiff's counsel noted at the administrative hearing, it did not list a job that accurately described Plaintiff's past work. If the Court agrees with this analysis, the next step is to consider Plaintiff's argument that the ALJ erroneously considered Plaintiff to have the transferrable skills necessary for three occupations for which he is not trained.

### III. Transferrable Skills

Classifying the claimant's past relevant work is the first step in the process of determining skill transferability. SSR 82-41, 1982 WL 31389, at *4. But the source of classification information does not necessarily have to come from the DOT: "A particular job may or may not be identifiable in authoritative reference materials. The claimant is in the best position to describe just what he or she did in PRW, how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc." *Id.* As explained above, the DOT does not describe Plaintiff's past relevant work. Therefore, the ALJ and the VE correctly turned to Plaintiff's own descriptions of his work for identifying transferable skills.

Nonetheless, Plaintiff disputes that the skills are transferrable to the other occupations the VE and ALJ identified, arguing that for individuals over the age of 55 limited to sedentary occupations, the tools, work processes, work settings, and industry of any new work must remain similar to the work the claimant has performed before. Doc. 28 at 3. Because the work the ALJ concluded Plaintiff could perform—data examination clerk, sorter, and appointment clerk— differed from Plaintiff's prior work as a bank consultant and involved different skills, Plaintiff argues that they are not appropriate jobs for the ALJ to rely upon at step five. Doc. 20 at 12.

SSR 82-41 addresses Plaintiff's argument about transferability of skills for individuals age 55 or over:

> Special provisions made for transferability. To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any vocational adjustment required in terms of tools, work processes, work settings or the industry . . . . Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their PRW. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.
> Generally, where job skills are unique to a specific work process in a particular industry or work setting, e.g., carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry. **On the other hand, where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment** where jobs with similar skills can be identified as being within an individual's RFC.

1982 WL 31389, at *5-6 (emphasis added). Here, Plaintiff's work history in the banking profession was of the "clerical, professional, administrative, or managerial" nature that SSR 81-42 describes as easily transferrable. The VE testified that Plaintiff's past relevant work involved the transferable skills of "ability to deal with detailed and sometimes confusing financial information; ability to make and understand financial records, analyze and record properly detailed information." AR 75-76, 98-99. Plaintiff does not actually dispute that his past relevant work involved these skills. *Cf.* Doc. 20 at 12.

The VE identified representative occupations an individual with such transferable skills could perform. AR 99-101. Plaintiff's argument is only that the other occupations do "not represent the same tools, work processes, work settings, or the industry." Doc. 20 at 12. Plaintiff

13

objects to the proposed vocations of data examination clerk, sorter, and appointment clerk as "in a category of general office clerks" rather than the industry Plaintiff has experience working in. *Id.* But the law permits change "across industry lines" when the transferrable skills "have universal applicability." SSR 81-42, 1982 WL 31389, at *6. And the work may appropriately involve "[t]he same *or a lesser* degree of skill." 20 C.F.R. § 404.1568(d)(2) (emphasis added); *see also Dikeman*, 245 F.3d at 1188. Here, the skills the ALJ identified as being transferrable have universal applicability and the work the ALJ identified Plaintiff as being able to perform is semi-skilled, requiring less skill than his past relevant work. Therefore, the process the ALJ used in reaching a conclusion about Plaintiff's transferable skills and the work Plaintiff can perform complies with Social Security regulations.

The VE's testimony is substantial evidence supporting the ALJ's decision at step five as long as it is "more than a mere scintilla" and the kind of evidence that "a reasonable mind might accept as adequate to support" a finding about job availability. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019). Using this standard, I recommend that the Court find the VE's testimony about skill transfer to be reasonably adequate. Plaintiff provides no support for his challenge of the VE's explanation that his skills from the banking industry can transfer effectively to *less* demanding clerical work and does not convincingly show that it is unreasonable to conclude that such a transfer "can usually be accomplished with very little, if any, vocational adjustment." SSR 81-42, 1982 WL 31389, at *6. Therefore, I recommend that the Court find the ALJ's reliance on the VE's proposed vocations to have the support of substantial evidence.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**